ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 14 2007

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| FABBRIZIO BORRONI, Derivatively on behalf of Nominal Defendant CHECKFREE CORPORATION, : : : : | Civil Action No.: **1:07-CV-1382** **TWT** |
| Plaintiff : | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |
| v. : | |
| PETER KIGHT, MARK JOHNSON, WILLIAM BOARDMAN, JAMES D. DIXON C. KIM GOODWIN, EUGENE F. QUINN, JEFFREY M. WILKINS, and DAVID MANGUM, : : : : : : | |
| Defendants, : | |
| and : | |
| CHECKFREE CORPORATION, a Delaware corporation, : : | **JURY TRIAL DEMANDED** |
| Nominal Defendant : | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint. Plaintiff alleges the following upon information and belief based on, among other things, an investigation by and through his

1

lawyers, except for allegations as to his ownership of common stock of CheckFree Corporation.

## SUMMARY OF THE ACTION

1.     This derivative action arises out of conduct related to alleged breaches of fiduciary duties, aiding and abetting thereof and unjust enrichment by certain directors and/or officers of CheckFree Corporation ("CheckFree" or "the Company").

2.     During April 4 through August 2, 2006 (the "Relevant Period") the Individual Defendants named, *infra*, made – or approved the making of public statements concerning Q406 growth prospects of the Company's largest division, while growth in that division during April 2006 was already substantially lower than Individual Defendants' guidance to the public. Moreover, the Individual Defendants knew that May and June 2006 growth in that division was not sufficient to make up for April softness but were silent about that fact until August.

3.     During June 14 and 15, 2006, the Company's Chairman/CEO sold nearly 2 ½ times the number of shares that he sold during all of 2005. Notwithstanding the red flag raised by the sales, the Company's board permitted them to occur and to date has not enforced relevant provisions of the Company's code of conduct as to the Chairman/CEO.

2

4.     In August 2006, the truth about the Company's growth began to emerge, and the Company's stock market capitalization dropped by over $500 million.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332 in that complete diversity of citizenship exists between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and Rule 23.1 of the Federal Rules of Civil Procedure authorizing derivative actions by shareholders to remedy Individual Defendants' violations of state common law. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

6.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the Individual Defendants either resides in or maintains executive offices in this district, and the Individual Defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

3

## PARTIES

7.     Plaintiff Fabbrizio Borroni is, and was at all relevant times, a shareholder of nominal defendant CheckFree. He is a citizen of Italy.

8.     Nominal defendant CheckFree is a Delaware corporation with its principal executive offices located at 4411 East Jones Bridge Road, Norcross, Georgia 30092.

9.     Individual Defendant Peter Kight founded the Company and has served as Chairman and Chief Executive Officer of the Company since December 1997. Since 1981, he has also served as Chairman and Chief Executive Officer of CheckFree Services Corporation. Mr. Kight is also a director of CheckFree Services Corporation. From 1997 to 1999, Mr. Kight served as President of CheckFree Corporation and, from 1981 to 1999, he served as President of CheckFree Services Corporation. Mr. Kight is a director of Akamai Technologies, Inc. and has concurrently served on that board and on its compensation committee with Ms. Goodwin. On June 14, 2006, Mr. Kight sold 166,900 shares of CheckFree stock for proceeds of over $7.6 million. On June 15, 2006, Mr. Kight sold an additional 183,100 shares for proceeds of over $8.5 million. In contrast, during all of 2005, Mr. Kight sold only 151,670 shares of Company stock. Mr. Kight's June 14 --

4

15, 2006 sales were not made pursuant to a pre-existing stock sale program. He is a citizen of Georgia.

10. Individual Defendant Mark Johnson has served as a director since 1983. He also serves as a director and as Vice Chairman of CheckFree Services Corporation and as a director of One Vu Limited, the Company's joint venture company with Voca Limited in the United Kingdom. Mr. Johnson returned to serve as the Company's Vice Chairman in January 2003. Prior to that, he served as Vice Chairman from December 1997 to June 2000, as Executive Vice President, Business Development of CheckFree Services Corporation from 1993 to 1997, as Treasurer of CheckFree Services Corporation from 1993 to 1996, as Senior Vice President of CheckFree Services Corporation from 1991 to 1993, as a Vice President of CheckFree Services Corporation from 1982 to 1991. From June 2000 to January 2003, Mr. Johnson served as Chief Executive Officer of e-RM Partners. He is a citizen of Georgia.

11. Individual Defendant William Boardman serves as a director of the Company. Mr. Boardman was an officer of Bank One Corporation from 1984 until March 2001, when he retired from his positions as Vice Chairman and director of Bank One Corporation and Chairman and Chief Executive Officer of First USA Bank. From September 2001 to November 2003, Mr.

5

Boardman served as a Senior Advisor to Goldman Sachs & Company. Mr. Boardman served as Chairman of Visa International, Inc. from 1996 until his retirement in June 2005, and formerly served as a member of the board of directors of Visa International, Inc. and Visa U.S.A. Mr. Boardman chairs the Company's Governance Committee and is a member of the Compensation Committee. He is a citizen of Florida.

12. Individual Defendant James D. Dixon has served as a director since August 2000. Mr. Dixon served as Executive of Bankofamerica.com, a subsidiary of Bank of America, from February 2000 until his retirement in January 2002. Mr. Dixon was Group Executive of Bank of America Technology and Operations, a subsidiary of Bank of America, from September 1998 to February 2000. Mr. Dixon was President of NationsBank Services, Inc., a subsidiary of NationsBank Corporation, from 1992 until the 1998 merger of NationsBank Corporation and Bank of America Corporation. Mr. Dixon serves on the board of directors of BroadVision, Inc., 724 Solutions Inc. and Rare Hospitality International, Inc. Mr. Dixon chairs the Company's Audit Committee and is a member of the Governance Committee and of the Compensation Committee. He is a citizen of Georgia.

6

13.     Individual Defendant C. Kim Goodwin has served as a director since February 2006. From September 2002 until her retirement in February 2005, Ms. Goodwin was Chief Investment Officer – Equities of State Street Research, a money management firm. From September 1997 through August 2002, Ms. Goodwin was Chief Investment Officer – U.S. Growth Equities at American Century Investment Management, an investment management company. Ms. Goodwin also served on the board of directors of Akamai Technologies, Inc. and on that board's compensation committee, along with Mr. Kight. Ms. Goodwin is a member of the Company's Audit Committee. She is a citizen of Georgia.

14.     Individual Defendant Eugene F. Quinn has served as a director since 1994.   Since May 1999, Mr. Quinn has served as President of Confluence Partners, LLC, a private investment company.  From March 1997 to April 1999, Mr. Quinn served as Senior Vice President for Online and Interactive Services at MTV Networks, a division of Viacom, Inc. From 1984 to 1997, Mr. Quinn served as a senior executive at Tribune Company and its Chicago Tribune subsidiary.   Mr. Quinn chairs the Company's Compensation Committee and is a member of the Audit Committee.  On May 8, 2006, Mr. Quinn exercised options and sold 5,000 shares of Company stock for proceeds of $279,000. He is a citizen of Connecticut.

15. Individual Defendant Jeffrey M. Wilkins has served as a director since 1990. Since September 1, 2006, Mr. Wilkins has served as Chairman of Wilkins Associates, a business consulting firm. From May 2005 until August 31, 2006, Mr. Wilkins served as the President and Chief Executive Officer of UMC Partners, an independent, non-profit holding company for the commercialization of ideas and research emanating from The Ohio State University Medical Center. From March 2004 to May 2005, Mr. Wilkins served as the Executive Director of Technology Commercialization and Partnerships and as Interim Chief Information Officer of The Ohio State University Medical Center. From January 2002 to March 2004, Mr. Wilkins was the Chairman of Wilkins Associates. From August 1989 to August 2003, Mr. Wilkins served as Chairman of Metatec Corporation, and its successor Metatec International, Inc. Mr. Wilkins is a member of the Company's Governance Committee and of the Audit Committee. He is a citizen of Ohio.

16. Individual Defendant David Mangum serves as Executive Vice President and Chief Financial Officer of the Company. During the Relevant Period he was responsible for all financial operations of the Company, including accounting, tax, treasury, finance and investor relations. Mr.

8

Mangum also serves as a director of One Vu Limited. He is a citizen of Georgia.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17. Headquartered in Norcross, GA, CheckFree is a leading enabler of Internet-based Electronic Bill Presentment and Payment ("EBPP") services on behalf of financial institutions and businesses to consumers. CheckFree's customers are billers and distribution companies, such as large financial institutions and Internet portals, which provide a gateway for consumers to view and pay their bills.

18. According to CheckFree's filings with the Securities and Exchange Commission, the Company was founded in 1981 as an electronic payment processing company. It has become a leading provider of financial electronic commerce products and services and is organized into the Electronic Commerce Division, the Investment Services Division, and the Software Division.

19. The Electronic Commerce Division enables consumers to pay bills through a variety of methods and to receive bills electronically. CheckFree products and services enable consumers to receive and pay bills over the Internet and pay billers directly through biller-direct sites, by

9

telephone or through CheckFree's walk-in retail agent network. Consumers using these services access CheckFree's system primarily through consumer service providers ("CSPs"), billers and retail agents.     CSPs are organizations, such as banks, brokerage firms, Internet portals and content sites, Internet-based banks, Internet financial sites, and personal financial management software providers. Consumers can also access CheckFree's system through CheckFree hosted biller direct sites, www.mycheckfree.com, a network of retail agents for walk-in payments, or by phone on hosted interactive voice response applications. The Electronic Commerce Division is the largest of CheckFree's three divisions, contributing 75% of the Company's fiscal 2006 revenues.

20.    The    Investment    Services    Division    provides    portfolio management services to help nearly 400 financial institutions, including broker dealers, money managers, investment advisors, banks and insurance companies, deliver portfolio management, performance measurement and reporting services to their clients. The Investment Services Division contributed 12% of the Company's fiscal 2006 revenues.

21.    The Software Division provides financial software and services, including software, maintenance, support and professional services, through five product lines. These product lines are bank payment, operational risk

10

management, transaction process management (encompassing financial messaging and corporate actions), compliance, and electronic billing. The Software Division contributed 13% of the Company's fiscal 2006 revenues.

22. The Company's governance mechanisms include a code of conduct applicable to all directors, officers and associates. The code provides, in part:

> CheckFree Corporation operates its business in accordance with the highest ethical standards and relevant laws, and places the highest value on the integrity of each of its directors, officers and associates.

> * * *

> [...] At a minimum, you must comply at all times with the letter and spirit of the laws of the countries, states and municipalities in which we do business.

> * * *

> ### Use of Company Assets

> CheckFree assets, including CheckFree confidential information, may only be used for the purpose of furthering the proper business purpose of CheckFree and should not be used for personal gain.

> * * *

> ### SECURITIES LAWS AND INSIDER TRADING

> * * *

> **You may not place a purchase or sale order, or recommend that another person place a purchase or sale order, in our**

11

securities when you have knowledge of material information concerning CheckFree that has not been disclosed to the public. If you are in possession of material non-public information about CheckFree, you must refrain from trading in CheckFree stock or recommending that others do so [....]

\* \* \*

## VIOLATIONS

CheckFree expects all directors, officers and associates to conduct themselves in accordance with the Code. Failure to do so may result in disciplinary action, up to and including removal from your position and/or termination [....]

## Analyst Statements

23.    On or about April 4, 2006, Andrew W. Jeffrey, a financial analyst with SunTrust Robinson Humphrey, published a report on the Company entitled "EBPP Leader Appears Poised to Further Channel Leadership." Jeffrey raised his rating of the Company from "Neutral" to "Buy," and raised the Company's price target to $62.00 per share. In addition, the report stated in part:

We are raising our rating on CKFR from Neutral to Buy and introducing a $62 12-month target price. It is our opinion that the risk/reward in CKFR shares is increasingly favorable, as the company has successfully managed through several risk factors which we had believed would derail its earnings growth. We now believe the company is poised to deliver sustainable above-average organic revenue, EPS, EBITDA, FCF and PT ROIC expansion.

12

Specifically, we had been concerned that the expiration of the TransPoint minimum revenue guarantees, coupled with aggressive business re-investment, would conspire to slow revenue growth and put downward pressure on operating margin. However, while organic revenue growth has decelerated modestly, and operating margin appears poised to "normalize" in the mid-20%s, the company has masterfully managed investor expectations and effectively communicated the changes in its business model to the Street.

\* \* \*

**In summary, we applaud CheckFree's management for staying focused on its core business, aggressively re-investing for continued market leadership and low-cost provider status, as well as maintaining consistent financial performance and strong growth through a turbulent period in its history. We view the company as poised for ongoing impressive organic revenue and profit growth as it appears to have moved past most of the near-term challenges. We argue that CKFR shares will maintain a relative premium valuation – and could enjoy measurable multiple expansion – as the company delivers 11 – 13% long-term sustainable organic revenue growth and 16 – 18% long-term sustainable annual EPS expansion.**

\* \* \*

We project that CheckFree will sustain 25% annual transaction growth for the foreseeable future as it benefits from ongoing penetration of its installed base, growing adoption at smaller financial institutions and expansion of its off line electronic bill payment solutions. We also contend that growing eBill volumes will boost adoption and overall usage, even among those already paying bills on line. We believe eBills significantly improve the EBPP experience, making it easier and less prone to user error. CheckFree remains the eBill leader, although we estimate that eBills will be associated with only 16% of its transactions in calendar 2006.

13

We encourage investors to note that while sequential bill payment volume growth at BofA appears to be modestly slowing -- it was 4% in 4Q05 versus 10% in 3Q05, 8% in 2Q05 and 11% in 1Q05 -- the most recent quarter's volume still represented a 37% increase from the prior year. In addition, bill payment customers grew nearly 26%, year-over-year, in Bank of America's 4Q05. These results, coupled with the significantly lower adoption of on line bill payment at smaller ffinancial institutions, seem to support our outlook for 25% long-term sustainable annual transaction growth.

While our transaction growth projection is robust, we note that volume-based pricing and an increasingly competitive market will likely translate into revenue growth significantly lower than transactional expansion. We estimate that pricing will contract 15 -- 17%, annually, suggesting that longterm sustainable EBPP organic revenue growth will be in the 8 -- 10% range.

\* \* \*

## Valuation

We are introducing a $62 12-month target price. This target assumes that CKFR will attain a 30x P/E, based on our calendar 2007 EPS estimate of $2.08. This valuation would represent a 13% premium to our Transaction Processing universe's current average P/E. We contend that this relative premium would be supported by CheckFree's above-average sustainable organic revenue growth, expanding operating margin -- hence faster EPS growth -- and improving PT ROIC. We also cite the company's impressive track record of financial consistency as supporting a relative premium multiple.

24.    On April 9, 2006, Brian Keans, a financial analyst with Prudential Equity Group, published a report on the Company entitled "Earnings Preview: CKFR: Expecting Spike in Transaction Growth." The

analyst reiterated his "Overweight" rating of the Company's stock, meaning

that analysts "expect that the stock's total return will exceed the average

total return of all of the stocks covered by the analyst (or analyst team)."

The analyst projected that shares of the Company's stock would reach

$60.00 per share within twelve months. In addition, the analyst's report

stated in part:

## HIGHLIGHTS

We expect sequential transaction growth to accelerate this
quarter to 6% (vs. 1.8% in F2Q06), driven by the acquisition of
PhoneCharge (4M transactions) and the addition of legacy
Wachovia volume (3.2M active online customers) to its bill pay
platform. CKFR continues to focus on getting consumers to
pay more bills online and adding new strategic alliances in
order to stimulate growth in bill payment.

* * *

Moving past the FDC/MSFT minimums that rolled off in 1H06,
investors should focus on the improving bill payment sector,
and CKFR's improving operating margins.    We expect
operating margins to move from mid-20% to over 30% over the
next 12 – 18 months. We reiterate our Overweight rating and
$60 price target.

## DISCUSSION

**CheckFree Valuation.** Our 12-month $60 price target is based
on 17x our $3.55 CY07 EBITDA per share estimate, or 30x our
$2.00 CY07 underlying EPS estimate. Based upon a forecasted
long-term growth rate of 25%, this represents a P/E/G of 1.2x.
Also, at $60, CKFR shares would trade at 24x our CY07 FCF
estimate of $2.52 per share. We believe CKFR deserves a
premium to the market owing to its solid position in the

15

growing electronic bill pay market, and its forecasted 25%
long-term growth rate. As platform consolidation continues to
ramp, operating margins should steadily improve.

## Individual Defendants' Statements

25.    On April 25, 2006, Individual Defendants caused the Company

to issue a press release entitled "CheckFree Announces Fiscal 2006 Third

Quarter Results and Raises Full-Year Expectations." The press release

stated, in part:

> CheckFree Corporation (Nasdaq: CKFR) today announced
> third quarter GAAP (Generally Accepted Accounting
> Principles) revenue of $226.9 million, and underlying revenue
> of $227.7 million. The Company's GAAP net income for the
> quarter was $37.7 milllion, or $0.40 per share, and underlying
> net income was $40.1 million, or $0.43 per share. Free cash
> flow was $62.3 million for the quarter, as outlined in
> Attachment A.

* * *

> "CheckFree executed well in each of our operating units during
> the third quarter," said Pete Kight, Chairman and Chief
> Executive Officer of CheckFree. "Our Software unit completed
> one of its strongest contract sales quarters ever; in Electronic
> Commerce, transactions processed saw consistent growth
> month-over-month; and in CheckFree Investment Services, we
> had another solid quarter."

## Third Quarter Highlights

> For the third quarter, the Company reported that its Software
> division delivered strong performance. It also reported that its
> Electronic Commerce division processed 293.3 million
> transactions, an 8 percent sequential increase over the second
> quarter of fiscal 2006, and delivered 46.7 million e-Bills, a

16

sequential increase of 3 percent over the second quarter of fiscal 2006. CheckFree Investment Services reported almost 2.2 million portfolios under management, which compares to almost 1.8 million portfolios under management reported in the third quarter of fiscal 2005.

The Electronic Commerce division acquired PhoneCharge, Inc., for $99.8 million and the Investment Services division divested its M-Solutions business for $18.6 million, resulting in a gain on the sale of $12.8 million. The Company also repurchased over 150,000 shares of common stock for approximately $7.0 million.

\* \* \*

## Financial Outlook for the Fourth Quarter and the Fiscal Year

"Based on strong year-to-date results, we have raised our expectations for the Company's consolidated performance," said CheckFree Chief Financial Officer David Mangum. "For the fourth quarter of fiscal 2006, we expect revenue in the range of $226 million to $231 million, GAAP earnings per share in the range of $0.30 to $0.33, and underlying earnings per share in the range of $0.39 to $0.41. For the full year, we now expect GAAP earnings per share in the range of $1.34 to $1.37, underlying earnings per share in the range of $1.72 to $1.74, and free cash flow to be about $175 million."

26.   On April 25, 2006, a conference call was held with analysts and

investors to discuss the Company's quarterly results and projections. During

the call, Kight and Mangum stated in part:

PETE KIGHT, CHAIRMAN OF THE BOARD AND CEO, CHECKFREE CORPORATION: Good afternoon. If you had an opportunity to review the press release we issued earlier today, you saw that we reported strong performance across the board. In our Electronic Commerce division, we processed

17

293.3 billion transactions during the quarter, representing an 8% sequential quarterly growth.

In our full service category, we processed 206.7 million payments this quarter. This represents a 9% sequential increase with strong transaction growth across the board. In addition, in a migration that has been anticipated for some time, Wachovia converted nearly half of its legacy consumers to CheckFree during the last week of the third quarter. And we expect the full migration to be complete by mid-May.

For Payment Services, which included a full quarter of PhoneCharge transactions, we processed 86.6 million payments this quarter, representing a 7% sequential quarterly growth. We delivered 46.7 million electronic bills during the quarter, representing a 3% sequential quarterly increase.

Within our Electronic Commerce Division, we continue on pace with the integration of both Aphelion [...] and PhoneCharge [....] Both business units have performed well, with PhoneCharge slightly ahead of expectations for transactions processed and revenue generated during its first reporting quarter.

* * *

DAVE MANGUM: [...] Turning now to fourth quarter expectations: We anticipate consolidated revenue in the range of 226 million to $231 million and earnings per share of $0.30 to $0.33 on a GAAP basis and $0.39 and $0.41 on an underlying basis. In Electronic Commerce, we expect sequential transaction growth of 5 to 8%. [...] In Payment Services, we expect to return to more modest transaction growth. We expect revenue per transaction in this category to remain relatively flat. We expect the underlying operating margin in Electronic Commerce to fall a couple of percentage points in the fourth quarter. ... We are increasing our full year financial expectations, based on our strong overall performance year-to-date. Full year earnings per share

expectations are now $1.34 to $1.37 on a GAAP basis and $1.72 to $1.74 on an underlying basis.

27.    On April 26, 2006, analyst Andrew Jeffrey published another

research report on the Company entitled "Execution Is King As CheckFree

Delivers Again". The report stated in part:

> We remain bullish on CKFR and we recommend that aggressive growth investors continue accumulating the shares following last night's strong 3Q06 results.
>
> CheckFree exceeded our revenue and EPS estimates and the Street mean expectations through a combination of steady core EBPP performance, better-than-expected results at its recently-acquired PhoneCharge subsidiary and impressive operating leverage. We believe the company will continue delivering results which exceed investors' expectations.
>
> It is our opinion that CheckFree's management has built a predicable, scalable growth company by delivering the best EBPP services and products through various channels. The company's best-of-breed solutions have resulted in meaningful competitive differentiation and sutainable barriers to entry, in our opinion. In addition, conservative financial guidance has allowed CheckFree to consistently outperform the Street's expectations. Persistence of these trends should support a widening relative valuation premium.
>
> Our bullish long-term investment thesis – and higher target price -- reflect our view that CheckFree's increasingly diverse business model can support greater operating leverage than many believe, resulting in measurably faster than expected EPS growth and higher returns. This strong performance has the potential to significantly boost the shares' valuation, in our opinion.

* * *

In summary, CheckFree's recent results continue an impressive pattern of exceeding investor expectations, even through tumultuous business change. We believe this performance is a credit to the company's management, execution and long-term vision. We argue that such performance will continue as the company consolidates its market-leading position and enjoys continued operating leverage.

[... ] we anticipate that CheckFree will continue its recent pattern of beating estimates and guiding the Street higher.

## The Truth Begins to Emerge

28.    On August 1, 2006, Individual Defendants caused the Company

to issue a press release entitled "CheckFree Announces Fourth Quarter and

Year-End Fiscal 2006 Results." The press release stated in part:

CheckFree Corporation (Nasdaq: CKFR) today announced fourth quarter revenue of $224.9 million, representing a 12 percent increase over the same period last year. The Company's GAAP (Generally Accepted Accounting Principles) net income for the quarter was $29.4 million, or $0.31 per share, and underlying net income was $36.5 million, or $0.39 per share. CheckFree reported GAAP consolidated revenue for fiscal 2006 of $879.4 million, reflecting 17 percent growth over fiscal 2005, and underlying revenue of $884.4 million for fiscal 2006, also reflecting 17 percent growth over the previous fiscal year.

* * *

"We are pleased with our fiscal 2006 results," said Pete Kight, CheckFree Chairman and Chief Executive Officer. "Year-over-year growth met our targets. In the fourth quarter, our Software and Investment Services Divisions reported solid performance. **The consumer transaction growth in our Electronic**

20

Commerce Division was soft for the quarter, resulting in quarterly growth below our expectations. The long-term growth drivers of the consumer business were all strong, including retained customers, new financial institution contracts and new biller signings. We are entering fiscal 2007 with strong fundamentals and increasing opportunity to extend our market share in each of our business categories."

\* \* \*

## Fourth Quarter and Fiscal Year 2006 Highlights

For the fourth quarter of fiscal 2006, the Company reported that the Electronic Commerce Division processed 302.2 million transactions, a 3 percent sequential increase over the third quarter of fiscal 2006. For fiscal 2006, 1.13 billion transactions were processed, compared to 904.5 million transactions processed in the previous fiscal year, representing 25 percent annual growth. The Company delivered 50.0 million electronic bills during the fourth quarter, which reflects a 7 percent sequential quarterly increase. For fiscal 2006, CheckFree reported 184.6 million electronic bills, a 32 percent year-over-year increase.

\* \* \*

The Company also announced that it repurchased more than 550,000 shares of its common stock for approximately $26 million during the fourth quarter. The Company's board of directors recently approved a new, separate stock repurchase program under which CheckFree may repurchase up to $100 million in shares of its common stock through July 31, 2007.

(emphasis added)

29.     Also on August 1, 2006, another conference call was held with financial analysts and investors. During this call, Individual Defendant Kight stated, in part:

21

In opening I will say that I am pleased with the results of our overall fiscal 2006 performance. CheckFree posted solid results for the year while managing through a lot of moving parts during 2006. We absorbed a lot in one year while continuing to invest in the business, and I am proud of what these people accomplished this year.

**For the fourth quarter, however, our Electronic Commerce division reported lighter consumer transaction growth, and the division fell short of our expectations as you are now aware. We processed 302.2 million transactions during the quarter, representing 3% sequential quarterly growth.** For the year we reported 1.13 billion transactions, representing 25% annual growth.

In our full-service category, we process 217.2 million payments this quarter, representing 5% sequential quarterly growth. For the year we processed 793.7 million full-service transactions, representing a 34% annual increase. For payment services, we processed 85 million payments for this quarter, and that is a 2% sequential quarterly decline. We processed 338.5 million payment service transactions for the year, representing an 8% sequential annual increase.

**So we will continue to research the causes of the Q4 transaction growth softness in more depth. It appears a combination of a recurring trend we have seen previously where there are fewer billing cycles in April, and therefore, consumers make fewer payments in the month. In a temporary disruption in consumer transaction behavior at our large bank client that switched to non-float or what we call risk-based processing.**

**The April drop in payment transactions is a calendar-based transaction issue. This is not a bank-based phenomenon.**

\* \* \*

[...] April is the one where clearly the lost billing cycle among a larger number of billers than we realized caused the biggest

drop in the transaction growth. The transaction growth does improve in May and June, but one of the differences this quarter over previous quarters is it did not improve as much in May and June as it has in previous quarters.

(emphasis added)

30.    Mr. Kight knew of the April, May and at least part of the June 2006 softness in transaction growth when he sold shares of Company stock. Item 9A of the Company's June 30, 2006 Form 10-K states that the CEO and CFO determined that the Company's disclosure controls and procedures ensured that material information relating to the Company was accumulated and made known to management, including the CEO and CFO, in a timely manner.

31.    In response to the news, the Company's share price fell $5.93 per share, or 13.75 percent, to close on August 2, 2006 at $37.20 per share and resulted in a loss in the Company's market capitalization of over $500 million.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

32.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress Individual Defendants' breaches of fiduciary duties and unjust enrichment.

33.    Plaintiff is an owner of CheckFree common stock and was an owner of CheckFree common stock at all times relevant hereto.

23

34.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

35.    As a result of the facts set forth herein, plaintiff has not made any demand on the CheckFree Board of Directors to institute this action against the Individual Defendants.   Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

36.    The Board currently consists of 7 directors:   Kight, Johnson, Boardman, Dixon, Goodwin , Quinn, and Wilkins.

37.    The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

(a)    Mr. Kight, a seller of Company stock during the Relevant Period, is interested in this litigation.   In addition, as an officer of the Company, he is beholden to the Board for his position and remuneration.

(b)    Mr. Johnson has previously been determined by the Board not to be independent.

(c)    Ms. Goodwin lacks independence by virtue of her prior business relationship with Mr. Kight, -- namely, the

24

overlapping directorship on the Akamai board of directors. Moreover, Ms. Goodwin's resignation from the Akamai board occurred shortly after Mr. Kight sold shares and appears to have occurred to give the appearance of Ms. Goodwin's independence.

(d)     Mr. Quinn, a seller of Company stock during the Relevant Period, is interested in this litigation.

(e)     All of the directors lack independence, having failed to implement adequate internal controls to guard against the misuse of confidential information for personal gain.

(f)     All of the directors lack independence in view of the fact that they have not enforced the Company's Code of Business Conduct against Mr. Kight in connection with his wrongful conduct.

(g)     Due to the "insured versus insured exclusion" in most applicable directors and officers liability insurance policies, if CheckFree's directors were to cause CheckFree to prosecute claims alleged herein, there would be no directors' and officers' insurance protection.

25

38.    Furthermore, a demand is excused because the misconduct
complained of herein was not, and could not have been, an exercise of good
faith business judgment.

39.    The complained of acts cannot be valid exercises of business
judgment because they subjected the Company to potentially massive
liability in connection with the prosecution of recently-filed securities fraud
class action litigation and to substantial expense related to the defense of
those suits.    Moreover, the Company lost massive amounts of market
capitalization.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty against all Individual Defendants)

40.    Plaintiff incorporates by reference all allegations in this
complaint as if fully set forth herein.

41.    The Individual Defendants identified in Paragraphs 9 through
16 owed CheckFree fiduciary obligations.    By reason of their fiduciary
obligations the Individual Defendants owed and owe CheckFree the highest
obligation of good faith, fair dealing, loyalty and due care.

42.    By reason of their positions as officers, directors and fiduciaries
of CheckFree and because of their abilities to control the business and
corporate affairs of CheckFree, the Individual Defendants owed CheckFree

and its stockholders ficuciary obligations of trust, loyalty, good faith and due care and were and are required to use their utmost ability to control and manage CheckFree in a fair, just, honest and equitable manner.

43. The Individual Defendants were and are required to act in the furtherance of the best interests of CheckFree and its stockholders equally and not in furtherance of their personal interest or benefit.

44. Each of the Individual Defendants owes to CheckFree and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a public company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's transactions so that the market price of the Company's stock would be based upon truthful and accurate information.

45. The Individual Defendants, because of their positions of control and authority, were able to and did directly and/or indirectly exercise control over the wrongful acts complained of herein, as well as the contents of various public statements issued by the Company. Because of their directorships and/or employment positions with the Company, each of the

27

Individual Defendants had access to adverse non-public information about the Company's business.

46.    At all relevant times hereto, each Individual Defendant was the agent of each of the other Individual Defendants and of CheckFree and was at all times acting within the course and scope of such agency.

47.    To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

(a)    refrain from acting on material inside information to benefit themselves;

(b)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminate truthful and accurate information to the public and the SEC;

(c)    conduct the affairs of the Company in an efficient and businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting

the Company's assets and to maximize the value of the Company's stock'

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of internal controls such that the Company's financial reporting would be true and accurate at all times and insiders could not use material inside information to benefit themselves;

(e)     remain informed on how CheckFree conducted its business, and upon receipt of notice or information of imprudent or unsound conditions or business practices, to make reasonably inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state laws; and

(f)     ensure that the Company was operated in a diligent and honest and prudent manner in compliance with all applicable federal, state and local law, rules and regulations.

29

48. The conduct complained of involves a knowing or culpable violation of the Individual Defendants' fiduciary duties, the absence of good faith on their part, and a reckless disregard for their duties to CheckFree and its stockholders that the Individual Defendants were aware or should have been aware would damage the Company.

49. The Individual Defendants breached their duties of good faith and loyalty by causing the Company to misrepresent its financial prospects, by failing to prevent or timely correct such illegal actions, by permitting certain of the Individual Defendants to use confidential information to obtain personal benefits and by failing to devise adequate internal controls to prevent usurption of confidential Company information and implement the Company's Code of Conduct.

50. The Individual Defendants who were members of the Company's Audit Committee breached their duties of good faith and loyalty. Their responsibilities were ones of proactive oversight pursuant to the Charter and to relevant law and Nasdaq and SEC guidelines.

51. Because of the Individual Defendants' wrongful conduct, CheckFree is a defendant in a securities fraud class action suit that will necessitate expenditure of significant amounts of money related to defending

that lawsuit, has lost millions of dollars in stock market capitalization and has suffered irreparable damage to its corporate image and goodwill.

52.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, CheckFree suffered significant damages for which the Individual Defendants are monetarily liable.

## SECOND CAUSE OF ACTION

### (Aiding and Abetting Against All Individual Defendants)

53.    Plaintiff incorporates by reference all allegations in this complaint as if fully set forth herein.

54.    Certain of the Individual Defendants breached their fiduciary duties to CheckFree.

55.    The Individual Defendants knew that certain Individual Defendants breached their fiduciary duties to CheckFree.

56.    The Individual Defendants gave substantial assistance to certain of the Individual Defendants who breached their fiduciary duties to CheckFree.

57.    As a result of the Individual Defendants' participation in breaches of fiduciary duties, CheckFree has been damaged in an amount to be proven at trial.

31

## THIRD CAUSE OF ACTION

### (Unjust Enrichment Against Individual Defendant Kight)

58.   Plaintiff incorporates all allegations in this complaint as if fully set forth herein.

59.   Individual Defendant Kight was unjustly enriched by his receipt and retention of funds from the sale of shares as alleged in paragraph 9, *supra*, for a total of $16.1 million. It would be unconscionable under the facts as alleged herein to allow him to retain the benefits thereof.

60.   To remedy Individual Defendant Kight's unjust enrichment, the Court should order him to disgorge to the Company all of the funds he received relating to his June 14-15, 2006 sale of 350,000 shares of Company stock.

## FOURTH CAUSE OF ACTION

### (Contribution and Indemnification Against All Individual Defendants)

61.   Plaintiff incorporates all allegations in this complaint as if fully set forth herein.

62.   Checkfree is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to Individual Defendants' liability to Checkfree.

32

63. Checkfree's alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and Checkfree is entitled to contribution and indemnification from each of the Defendants in connection with all such claims that have been, are or may in the future be asserted against Checkfree by virtue of the Individual Defendants' misconduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Determining that this suit is a proper derivative action and that plaintiff is an appropriate representative of CheckFree;

B. Declaring that the Individual Defendants, and each of them, have been and/or have committed breaches of fiduciary duties and aided and abetted such breaches;

C. Against the Individual Defendants, and each of them, and in favor of CheckFree, for the amount of damage sustained by CheckFree as a result of the Individual Defendants' breaches of fiduciary duties and aiding and abetting thereof;

33

D. Requiring the directors of CheckFree to enforce the Company's Code of Conduct in all respects, and to institute and enforce adequate and appropriate procedural safeguards to ensure against wrongdoing of the type alleged herein;

E. Granting any and all other appropriate equitable relief to remedy Individual Defendants breaches of fiduciary duties;

F. Requiring Individual Defendant Kight to disgorge all funds wrongfully received in connection with his sale of Company stock during June 2006;

G. Granting Checkfree contribution and indemnification from the Individual Defendants in connection with all such claims that have been or may be asserted against Checkfree by virtue of the Individual Defendants' misconduct;

H. Awarding CheckFree pre- and post- judgment interest at the maximum legal rate on all claims alleged herein;

I. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys fees, accountants' and experts' fees, costs and expenses; and

J. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: June 13, 2007

Respectfully submitted,

By:

**LAW OFFICE OF DAVID J.
HUNGELING, P.C.**
David J. Hungeling
Georgia Bar No. 378417
Suite 2250, Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326
Phone: 404-842-7236
Fax: 404-842-7222

**EMERSON POYNTER LLP**
John G. Emerson
Scott E. Poynter
Chris Jennings
The Museum Center
500 President Clinton Avenue
Suite 305
Little Rock, AR 72201
Ph: 501.907.2555
Fx: 501.907.2556

## VERIFICATION

I am the Plaintiff in this shareholder derivative action and I was a Checkfree shareholder during all of the relevant times that the events alleged to have taken place in this Complaint occurred. Also, I continue to hold my shares. I believe the factual allegations in the Complaint to be true based upon my own personal knowledge and my counsel's investigation. Having received a copy of this Complaint, having reviewed it with my Counsel, I hereby authorize its filing.

FABBRIZIO BORRONI